**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VLADIMIR GORGADZE, et al.,**<br>**Plaintiffs,**<br>**v.**<br>**ANTONY BLINKEN, Secretary of State, et al.,**<br>**Defendants.** | **Civil Action No. 21-2421 (JDB)** |

**ORDER**

Plaintiffs Vladimir Gorgadze, his wife Elena Petukhova, and their son Mikhail Gorgadze are Russian nationals who were selected to participate in the annual Diversity Visa ("DV") program for the 2021 fiscal year (with Petukhova and Mikhail Gorgadze as derivative beneficiaries of Vladimir Gorgadze). Unfortunately, delays related to both the COVID-19 pandemic and to staffing and capacity issues at consular facilities in Russia, see Mem. Op., Sept. 29, 2021 [ECF No. 23] ("Mem. Op.") at 4–7, meant that the plaintiffs were unable to become documentarily qualified or to schedule and attend the required interview before their eligibility to receive visas expired on September 30, 2021, see 8 U.S.C. §§ 1153(c)(1), 1154(a)(1)(I)(ii)(II); see generally Mem. Op. at 2–8.[1] Shortly before that deadline, plaintiffs filed a complaint seeking an order declaring defendants' policies and processing delays unlawful and compelling defendants to process plaintiffs' applications. See Compl. [ECF No. 1] ¶ 78. The deadline has now passed. Because plaintiffs' claims are moot or plaintiffs lack standing to bring them, the Court will grant defendants' motion to dismiss the complaint.

[1] The Court assumes familiarity with the legal and factual background set forth at length in its prior Memorandum Opinion.

**Background**

Plaintiffs filed their complaint on September 14, 2021, alleging that defendants had unreasonably delayed processing their DV applications in violation of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"). Compl. ¶¶ 65–77. They sought a writ of mandamus compelling defendants to adjudicate their applications—and schedule and conduct their interview—before the statutory deadline, id. ¶ 78(a)–(b); they also asked the Court to "[r]eserv[e] immigrant visas for Plaintiffs" should defendants fail to act before the deadline and to declare that ranking DVs in the lowest-priority processing tier violates Section 706(1), (2)(A), and (2)(D) of the APA, id. ¶ 78(c)–(d).

Three days later, on September 17, 2021, plaintiffs filed an emergency motion for a temporary restraining order ("TRO") and/or preliminary injunction, seeking much the same relief as in their complaint. See Pls.' Emergency Mot. for TRO and/or Prelim. Inj. [ECF No. 4] at 2.[2] Defendants filed a consolidated motion to dismiss the complaint and opposition to plaintiffs' motion for a TRO, see Mem. of P. & A. in Supp. of Defs.' Cross-Mot. to Dismiss & Opp'n to Pls.' Mot. for TRO and Prelim. Inj. [ECF No. 11-1] ("Mot. to Dismiss") at 2–3, which plaintiffs opposed in turn, see Pls.' Reply in Supp of Mot. for TRO and/or Prelim. Inj. & Opp'n to Mot. to Dismiss [ECF No. 13]. On September 29, the Court denied plaintiffs' motion for emergency relief but "defer[red] decision on defendants' motion to dismiss." Mem. Op. at 8–9.

Defendants subsequently filed a reply in support of their motion to dismiss, see Reply Mem. in Supp. of Defs.' Cross-Mot. to Dismiss [ECF No. 27] ("Defs.' Reply"), and, with the

[2] In their emergency motion, plaintiffs clarified that they were challenging two particular policy decisions regarding the prioritization of DVs for processing: Presidential Proclamation 10014, which suspended entry into the United States for DV applicants, among other categories, and a November 2020 prioritization scheme that placed DVs in the lowest-priority category for processing. See Pls.' Mem. of Law in Supp. of Emergency Mot. for TRO and/or Prelim. Injunction [ECF No. 4-1] at 10–12; see also Mem. Op. at 4–5 (describing the two challenged policies in detail).

Court's leave, plaintiffs filed a sur-reply on November 2, see Pls.' Surreply in Opp'n to Defs.' Cross-Mot. to Dismiss [ECF No. 30] ("Pls.' Sur-reply"). Defendants' motion to dismiss is now fully briefed and ripe for decision.

## Legal Standard

Standing is an essential component of a court's jurisdiction under the case-or-controversy requirement of Article III of the U.S. Constitution, which establishes an "irreducible constitutional minimum . . . consisting of three familiar elements." Farrell v. Blinken, 4 F.4th 124, 129 (D.C. Cir. 2021) (cleaned up; citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). On the third prong, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (citation omitted). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court," Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998); thus, if a "specific item[] of relief sought" would not remedy a plaintiff's injury, the plaintiff lacks standing, id. at 105–06; see Davis v. FEC, 554 U.S. 724, 734 (2008) (explaining that "[s]tanding is not dispensed in gross," so a "plaintiff must demonstrate standing for each . . . 'form of relief' that is sought" (citations omitted)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" all the elements of standing. Spokeo, 578 U.S. at 338.

Plaintiffs also must "maintain a personal interest in the dispute" throughout "all stages of litigation." Uzuegbunam v. Preczewski, 141 S. Ct. 792, 796 (2021). Standing "assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." Id. "A lawsuit becomes moot . . . 'when the issues presented are no

longer "live" or the parties lack a legally cognizable interest in the outcome.'" Breeze v. Kabila, Inc., Civ. A. No. 21-753 (JDB), 2021 WL 5918678, at *4 (D.D.C. Dec. 15, 2021) (quoting Zukerman v. U.S. Postal Serv., 961 F.3d 431, 442 (D.C. Cir. 2020)). Thus, "when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party," the case must be dismissed as moot. Zukerman, 961 F.3d at 442 (citation omitted). And like standing, this requirement applies to every form of relief that a plaintiff seeks. See, e.g., In re Smith, 114 F.3d 1247, 1249 (D.C. Cir. 1997).

**Analysis**

Plaintiffs' requested relief falls into three categories. First, plaintiffs seek an order compelling defendants to adjudicate their applications and to schedule and conduct their interview before the statutory deadline at the end of the fiscal year (September 30, 2021). Compl. ¶ 78(a)–(b). That deadline has now passed. The Immigration and Nationality Act provides that DV selectees like plaintiffs "shall remain eligible to receive [a DV] only through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(I)(ii)(II); cf. P.K. v. Tillerson, 302 F. Supp. 3d 1, 3 (D.D.C. 2017) ("[T]hose selected for the [DV] program are not guaranteed to receive a visa—only the opportunity to apply for one."). Because the end of the fiscal year in which plaintiffs were selected has passed, no consular officer may issue DVs to plaintiffs. See 22 C.F.R. § 42.33(a)(1) ("Under no circumstances may a consular officer issue a visa . . . to an alien after the end of the fiscal year during which an alien possesses [DV] eligibility."). Accordingly, as several other judges in this District have held in nearly identical cases, plaintiffs' claims for mandamus relief are "straightforwardly moot," Nepal v. U.S. Dep't of State, Case No. 1:21-cv-01073 (TNM), 2022 WL 1500561, at *4 (D.D.C. May 12, 2022)—it is now impossible for the Court to grant plaintiffs the mandamus relief they seek, see, e.g., Myslimi v. Biden, Case No. 21-

cv-02496 (APM), 2022 WL 1184566, at *1–2 (D.D.C. Apr. 20, 2022); Pushkar v. Blinken, Civ. A. No. 21-2297 (CKK), 2021 WL 5083438, at *1–2 (D.D.C. Nov. 2, 2021); Sabzevari v. Blinken, Civ. A. No. 21-2165 (TFH), 2021 WL 4989452, at *1 (D.D.C. Oct. 27, 2021).

Plaintiffs argue that the D.C. Circuit has "acknowledged at least some plausibility as to a federal court's exercise of its equitable power to order the government to process visas even though doing so would conflict with statutory limitations on visa issuance." Pls.' Sur-reply at 4. Relying on Almaqrami v. Pompeo, 933 F.3d 774 (D.C. Cir. 2019), plaintiffs contend that "the possibility of an exercise of equitable power to grant relief to Plaintiffs, even if 'uncertain or even unlikely,'" saves their mandamus claims from mootness. Pls.' Sur-Reply at 4 (quoting Almaqrami, 933 F.3d at 784). But, as plaintiffs concede, see id. at 2, Almaqrami also explains that "[s]ometimes a plaintiff files suit before the selection [fiscal year] ends but the court fails to act on that request until after September 30, at which point the State Department lacks authority to issue a diversity visa sought in the prior fiscal year. Courts have . . . dismissed these cases as moot," 933 F.3d at 980 (first citing Mwasaru v. Napolitano, 619 F.3d 545, 546–47, 551 (6th Cir. 2010) (affirming dismissal for mootness where district court did not grant relief before fiscal-year deadline); and then citing Zapata v. INS, 93 F. Supp. 2d 355, 358 (S.D.N.Y. 2000) (dismissing mandamus claims for mootness after end of fiscal year)). This case falls into the same framework: plaintiffs filed suit on September 14, 2021, but the Court granted no relief before the September 30 deadline. See Order, Sept. 29, 2021 [ECF No. 24] (denying plaintiffs' motion for a TRO and/or preliminary injunction).

And although plaintiffs note that the D.C. Circuit's point about what "some courts" have done in similar cases is dictum,[3] Pls.' Sur-Reply at 2–3, this Court concludes that it is nevertheless

[3] In Almaqrami, the D.C. Circuit held that where a "plaintiff files suit and the court grants some relief—but not the visa—before October 1," there could be a question as to the district court's power to order the State Department

the correct approach. Unlike in Almaqrami, where the "district court's preliminary order left open the possibility of further relief," and so "there was a live question about whether that further relief might include" an order "directing the State Department to issue . . . a visa," Nepal, 2022 WL 1500561, at *5, this Court's prior Order straightforwardly denied plaintiffs any relief, see Order, Sept. 29, 2021. Thus, in this case there is no "concomitant justiciable question about whether [defendants] can do anything 'pursuant to the [earlier] Order,'" Nepal, 2022 WL 1500561, at *5 (alteration in original) (quoting Almaqrami, 933 F.3d at 781). For the reasons explained by other judges in this District who faced the same question during the latest fiscal year's DV lottery, see, e.g., id. at *5; Myslimi, 2022 WL 1184566, at *1–2; Pushkar, 2021 WL 5083438, at *1–2; Sabzevari, 2021 WL 4989452, at *1, the Court concludes that it cannot grant effective relief to plaintiffs on their mandamus claims. Accordingly, the claims seeking an order compelling defendants to act on plaintiffs' now-expired DVs are moot.

Plaintiffs also request that the Court "[r]eserv[e] immigrant visas for Plaintiffs should Defendants fail to process Plaintiffs' . . . applications before end of day on September 30, 2021." Compl. ¶ 78(c). But this category of relief is moot for the same reason as plaintiffs' claim for mandamus: plaintiffs sought relief before the end of the fiscal year but received no relief by the time the statutory deadline elapsed. See Almaqrami, 933 F.3d at 780. It is also not relevant that another judge in this District enjoined the operation of one of defendants' challenged policies before plaintiffs filed their complaint. See Filazapovich v. Dep't of State, 560 F. Supp. 3d 203, 264 (D.D.C. 2021). As Judge Amit P. Mehta explained, the fact that a different court "did order the State Department to reserve 2021 [DVs] pending final disposition of" a different case does not

to take action with respect to unused DVs. 933 F.3d at 780–81. But that holding applied "in the context of [Almaqrami's] case," and not to the category of cases where a district court granted no relief before the deadline. Nepal, 2022 WL 1500561, at *5 (alteration in original).

control here—that court had already granted "injunctive relief before the end of the fiscal year," which is not true of the present action. Myslimi, 2022 WL 1184566, at *2; accord Pushkar, 2021 WL 5083438, at *2 ("The Court is not persuaded that . . . this court can still grant [plaintiff] any relief because another court in this jurisdiction granted some relief 'applicable' to [p]laintiff before the end of FY 2021.").

Finally, plaintiffs seek a declaration that "ranking [DVs] in the lowest priority" for processing "violates" sections 706(1), (2)(A), and (2)(D) of the APA. Compl. ¶ 78(d). But the policies plaintiffs challenge—a presidential proclamation and November 2020 agency guidance—are now defunct. See Mem. Op. at 12–15. Specifically, as the Court explained in its prior Memorandum Opinion, Proclamation 10014 was revoked in February 2021—before plaintiffs' lottery number became current in May 2021, id. at 12—and the challenged November 2020 prioritization guidance was invalidated by order of another judge in this District on September 9, 2021—before plaintiffs filed suit on September 14, id. at 13 (citing Filazapovich, 560 F. Supp. 3d at 246). Since neither policy was in force at the time plaintiffs filed their complaint, the Court could never have afforded effective relief to plaintiffs by declaring that two already-defunct policies violated the APA. See Mem. Op. at 14–15; Steel Co., 523 U.S. at 107. In other words, even at the moment plaintiffs filed their complaint, the Court would have been unable to address their alleged injury; for that reason, plaintiffs lacked—and continue to lack—standing to seek a declaration that these two inoperative policies were unlawful. Although plaintiffs argue that their claims for a declaration that defendants' policies "constituted unreasonable delay or the unlawful withholding of the adjudication of their DV applications" are not moot, Pls.' Sur-reply at 5, even if they were correct, they nonetheless fail to explain why they have standing to challenge these policies when a favorable decision by this Court would not redress their alleged injury.

Accordingly, and for the reasons expressed in its prior Memorandum Opinion, the Court concludes that plaintiffs lack standing as to their claim for declaratory judgment.

Because plaintiffs lack standing to bring their claims for violation of the APA and because plaintiffs' mandamus and visa-reservation claims are moot, it is hereby

**ORDERED** that [11] defendants' motion to dismiss the complaint is **GRANTED.**

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: July 12, 2022